IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSHUA BAGWELL, | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| v. | § | Civil Action No. 3:12-CV-01316-BK |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION

Pursuant to the parties' consent to proceed before the magistrate judge (Doc. 16), this case has been transferred to the undersigned for a final ruling. For the reasons discussed herein, Plaintiff's *Motion for Summary Judgment* (Doc. 17) is **GRANTED**, and Defendant's *Motion for Summary Judgment* (Doc. 18) is **DENIED**.

## I.  BACKGROUND[1]

### A.    Procedural History

Joshua Bagwell (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Commissioner) denying his claim for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) under the Social Security Act. In November 2009, Plaintiff filed for SSI and DIB, claiming that he had been disabled since December 2008. (Tr. at 25). His application was denied at all administrative levels, and he now appeals to the United States District Court pursuant to 42 U.S.C. § 405(g). (Tr. at 1, 22, 25).

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

B.      **Facts**

Plaintiff was 28 years old on the date of the administrative hearing and had a high school

education and past relevant work history as a cashier.  (Tr. at 42, 49, 149).  In February 2011,

Plaintiff underwent a psychiatric evaluation and was diagnosed with bipolar disorder, mixed,

with psychotic features.[2]  (Tr. at 322).

In March 2011, the ALJ held a hearing at which Plaintiff appeared *pro se*.  (Tr. at 37).

The ALJ asked Plaintiff if he had received a letter advising him of his right to representation,

together with a list that would assist him in finding a legal representative.  *Id*.  The ALJ

explained that the letter advised Plaintiff that there may be free services available to him if he

met the requirements of the particular organizations.  (Tr. at 38-39).  Plaintiff acknowledged that

he had received the letter, but stated that he wanted to continue with the hearing without

representation.  (Tr. at 37-38).  The ALJ asked Plaintiff if he needed extra time to obtain

representation, but Plaintiff declined.  (Tr. at 38).

Plaintiff testified about the limitations imposed by his finger injury and eye problems, and

he also stated that he had been diagnosed with anxiety and bipolar disorder.  (Tr. at 47-48).  A

vocational expert testified that a hypothetical individual who had the limitations that the ALJ

found Plaintiff suffered from could perform Plaintiff's past relevant work as a cashier.  (Tr. at

50).

---

[2] In addition to his mental impairment, Plaintiff suffers from (1) blindness, retinal detachment, and cataracts in his left eye; (2) flashes of light, floaters, and episodes of blacked out vision in his right eye; and (3) a tear of the radial collateral ligament in his left ring finger.  (Tr. at 292-93, 296, 316).  Those impairments are not further discussed because Plaintiff only relies on his mental impairments in support of his appeal to this Court.

C.      **The ALJ's Findings**

In October 2011, the ALJ rendered her decision, finding first that Plaintiff had not

engaged in substantial gainful activity since his alleged disability onset date.  (Tr. at 27).  Next,

the ALJ determined that Plaintiff's retinal detachment, glaucoma, and left ring finger injury were

severe impairments.  *Id*.  The ALJ then found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled one of the listed impairments in 20

C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. at 28).  The ALJ noted that while Plaintiff testified

that he had bipolar disorder, the only notation of that in the record was the February 2011

discharge note.  (Tr. at 31).  Next, the ALJ determined that Plaintiff could perform medium work

and was able to return to his past relevant work as a cashier.  *Id.*  The ALJ thus concluded that

Plaintiff was not disabled.  *Id*.

D.      **Administrative Appeal Proceedings**

During the administrative appeal, Plaintiff, who was now represented by counsel,

supplemented the record with additional medical evidence that showed the following: Plaintiff

had another psychiatric evaluation in August 2011 conducted by Dr. Mehmooda Nasir.  (Tr. at

323-24).  Dr. Nasir stated that Plaintiff experienced general hate and suicidal and homicidal

ideation with past plans to jump off a bridge.  *Id*.  Plaintiff stated that he did not go through with

the suicide because he feared that he would not actually die, but just injure himself.  *Id*.  Dr.

Nasir observed that Plaintiff had depressive symptoms, including increased appetite and

decreased energy, libido, and concentration.  *Id*.  He also noted that Plaintiff experienced

auditory and olfactory hallucinations, paranoia, irritable mood, pressured speech, flight of ideas,

and impulsivity including anger and fights.  *Id*.  Plaintiff was cooperative, but guarded and

suspicious, his behavior was agitated, and he displayed grandiose delusions and nihilistic

thoughts, dysphoria, irritability, inappropriate affect, poor memory, and tangential thought

process.  (Tr. at 326).  Dr. Nasir observed that Plaintiff  was homicidal and had poor insight and

judgment.  *Id*.  He diagnosed Plaintiff with schizoaffective disorder and schizotypal personality

traits.  (Tr. at 327).

Dr. Nasir's progress notes from December 2011 stated that Plaintiff experienced

increased anger and decreased patience.  (Tr. at 331).  Plaintiff said that he wanted to "destroy

everything" and "came close to snapping his dog in half" because he "didn't want to hear the

sounds she makes."  *Id.*  In January 2012, Plaintiff stated that he had the homicidal ideation of

stabbing his father's head with a fork.  (Tr. at 329).  He said that he could murder his mother and

father in their sleep, and he experienced a "burning desire" to "kill people during [the] church

ceremony even if they are not doing anything."  *Id*.  Plaintiff also stated that he wanted to burn

down a business that he was fired from.  *Id*.

Upon review of this new evidence, the Appeals Council stated, "In looking at your case,

we considered the reasons you disagree with the decision and the additional evidence listed on

the enclosed Order of Appeals Council.  We found that this information does not provide a basis

for changing the Administrative Law Judge's Decision."  (Tr. at 1-2, 4) (listing additional mental

health records reviewed).

## II.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C.

§ 423(d)(1)(A).  The Commissioner uses the following sequential five-step inquiry to determine

whether a claimant is disabled:  (1) an individual who is working and engaging in substantial

gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not

disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the

regulations will be considered disabled without consideration of vocational factors; (4) if an

individual is capable of performing his past work, a finding of "not disabled" must be made; (5)

if an individual's impairment precludes him from performing his past work, other factors

including age, education, past work experience, and residual functional capacity must be

considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123,

125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(a)(4), 416.920 (a)(4)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  The analysis terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled.  *Id.*  If the claimant satisfies his burden under the first four steps, the burden shifts

to the Commissioner at step five to show that there is other gainful employment available in the

national economy that the claimant can perform.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th

Cir. 1994).  This burden may be satisfied either by reference to the Medical-Vocational

Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga*

*v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the

Commissioner's position is supported by substantial evidence and whether the Commissioner

applied proper legal standards in evaluating the evidence.  *Greenspan*, 38 F.3d at 236; 42 U.S.C.

§§ 405(g), 1383(C)(3).  Substantial evidence is more than a scintilla, less than a preponderance,

and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to

support a conclusion.  *Leggett*, 67 F.3d at 564.  Under this standard, the reviewing court does not

reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the

record to determine whether substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

### III.  ARGUMENTS AND ANALYSIS

**A.      Whether the ALJ erred by failing to adequately advise Plaintiff of his right to counsel**

Plaintiff first argues that his waiver of his right to counsel was invalid because the ALJ

only made a cursory inquiry into his decision to waive representation.  (Doc. 17-1 at 14-15).

Plaintiff maintains that his lack of counsel was prejudicial because counsel would have

introduced material evidence from his mental health care providers and testimony from Plaintiff

concerning the limitations imposed by his mental disorders.  *Id.*  He contends that the ALJ should

have specifically informed him that he could have obtained free legal services.  (Doc. 19 at 3-4).

Defendant responds that Plaintiff was informed in writing of his right to obtain counsel

several times prior to the hearing and was notified of his right again at the hearing.  (Doc. 18-1 at

4-6).  Defendant maintains that the ALJ also adequately alerted Plaintiff regarding how an

attorney could assist him, especially considering the numerous times he received full disclosure

in writing.  *Id.* at 6-7.

A Social Security claimant has a statutory right to representation at an administrative

hearing regarding disability benefits.  42 U.S.C. § 406; *Clark v. Schweiker*, 652 F.2d 399, 403

(5th Cir. 1981).  Any waiver of the right to representation must be knowingly made by the

claimant. *See Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996).

In this case, Plaintiff received at least six pre-hearing notices informing him that he may

be able to obtain free legal services. (Tr. 64, 74, 76-83, 85, 90-91). These documents informed

Plaintiff of his right to obtain a representative, stated that the Social Security office would give

him a list of referral organizations, and stated that he may be able to get free legal services if he

qualified. Two of the notices explained that the Commissioner generally could withhold no more

than 25% of past due benefits to pay for an attorney. (Tr. at 80, 91). At the hearing, the ALJ

confirmed that Plaintiff had received a letter discussing his right to legal representation and an

enclosed list of agencies that could assist him in obtaining free representation. (Tr. at 37-38).

The ALJ asked Plaintiff if he wanted to continue the hearing or if he needed additional time to

obtain representation, and Plaintiff responded that he wanted to continue with the hearing

unrepresented. *Id.*

The numerous written notices Plaintiff received, along with the ALJ's discussion with

Plaintiff of his right to counsel, sufficiently informed him of his right to an attorney, including a

free one if he financially qualified. Thus, Plaintiff validly consented to proceed without

representation. *See Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir. 2003) (concluding that the

four written notices Castillo received, along with the ALJ's reminder to Castillo at the hearing of

her right to counsel, sufficiently informed her of her right to an attorney). Plaintiff's case is

distinguishable factually from *Clark*, 652 F.2d at 403, on which he relies. In that case, the

appeals court held that a claimant had received insufficient notice of her right to counsel because

she received only one written notice, which did not mention that she could qualify for free

representation and, in fact, suggested that any representative whom she hired had the right "to

demand a fee for these services." *Id*.

**B.    Whether the Appeals Council adequately considered the new medical evidence Plaintiff submitted**

Plaintiff contends that the Commissioner's findings regarding his mental impairments are not supported by substantial evidence, especially in light of the new evidence he submitted to the Appeals Council. (Doc. 17-1 at 16-17, 19-20). Additionally, Plaintiff contends that the Commissioner failed to apply the special psychiatric review technique set forth in 20 C.F.R. § 404.1520a in evaluating the severity of his mental impairments. *Id.* at 18-19.

Defendant responds that the ALJ fully evaluated Plaintiff's alleged mental impairments and considered the February 2011 assessment, which was the only evidence of mental health treatment before her. (Doc. 18-1 at 8). Further, Defendant contends that a detailed discussion by the Appeals Council of the new evidence was not required because the Appeals Council clearly considered Plaintiff's new evidence and found the ALJ's decision supported by the record as a whole. *Id.* at 9. Finally, Defendant asserts that application of the psychiatric review technique required by section 404.1520a is only necessary when the ALJ finds that a claimant has a medically determinable mental impairment, and no such impairment was found in this case. *Id.* at 9-10.

Plaintiff replies that the Commissioner's findings that he did not have a severe mental impairment are not supported by substantial evidence in light of the new evidence he submitted to the Appeals Council. (Doc. 19 at 5-7).

Evidence submitted for the first time to the Appeals Council is considered part of the record upon which the Commissioner's final decision is based. *Higginbotham v. Barnhart*, 405

F.3d 332, 337 (5th Cir. 2005). Based on its internal procedures, however, the Appeals Council

does not have to provide a detailed discussion about all new evidence submitted to it. *Id.* at 335

n.1 (referring to a memorandum from the Commissioner's Executive Director of Appellate

Operations dated July 1995). New evidence justifies a remand only if it is material. *See Castillo*,

325 F.3d at 551-52. Evidence is material if: (1) it relates to the time period for which the

disability benefits were denied; and (2) there is a reasonable probability that it would have

changed the outcome of the disability determination. *Id.*

Where new medical evidence presented to the Appeals Council is so inconsistent with the

ALJ's findings that it undermines the ultimate disability determination, a remand is necessary so

that the Commissioner can fully evaluate all of the medical evidence. *James v. Astrue*, 2012 WL

920014, *6 (N.D. Tex. 2012) (Kaplan, M.J.) (remanding to Commissioner for reconsideration

where Appeals Council failed to specifically address new evidence that diluted the record to the

point that the Commissioner's determination was insufficiently supported); *Kelley v. Comm'r of

Social Sec. Admin.*, 2012 WL 527866, *12-13 (N.D. Tex.) (Stickney, M.J.) (same), *adopted by*

2012 WL 527864 (N.D. Tex. 2012); *Lee v. Astrue*, 2010 WL 3001904, *7 (N.D. Tex. 2010)

(same) (Ramirez, M.J.); *cf.* SSR 96-5 (providing that adjudicators must weigh medical source

statements and RFC assessments and "provide appropriate explanations for accepting or rejecting

such opinions"). This caselaw also finds support in 20 C.F.R. § 404.1527(e)(3), which requires

that when the Appeals Council makes a decision, it must follow the same rules for considering

medical opinion evidence that ALJs follow.

In this case, the only evidence before the ALJ of Plaintiff's mental health impairment was

Plaintiff's statement at the administrative hearing that he had bipolar disorder and anxiety and a

single page discharge summary stating that Plaintiff had been diagnosed with bipolar disorder, mixed, with psychotic features.  (Tr. 47, 322).  By contrast, the Appeals Council was provided with several pages of Plaintiff's later medical records, which set forth in great detail the disturbing state of his mental condition.  These records included statements that Plaintiff experienced numerous homicidal desires, including "snapping his dog in half," stabbing his father, killing both of his parents while they slept, committing a mass murder in his church, and burning down the business that fired him.  (Tr. at 329, 331).  These medical records also revealed that Plaintiff demonstrated serious symptoms of a mental disorder such as hallucinations, paranoid delusions, irritable mood, impulsivity including anger and fights, inappropriate affect, agitation, and poor insight and judgment.  (Tr. at 324, 326).  In addition to his prior diagnosis of bipolar disorder, Plaintiff also was newly diagnosed with schizoaffective disorder and schizotypal personality traits.  (Tr. at 327).

This new evidence is "material" because (1) it relates to the time period for which Plaintiff was denied benefits; and (2) there is a reasonable probability that a more studied review of the new records would have changed the outcome of the disability determination.  *See Castillo*, 325 F.3d at 551-52.  Moreover, the new medical evidence presented to the Appeals Council is so inconsistent with the ALJ's findings that it undermines the ultimate disability determination.  *James*, 2012 WL 920014 at *6.  Accordingly, remand is necessary so that the Commissioner can fully evaluate all of the medical evidence.  *Id.*  On remand, the Commissioner must also document in his written decision the application of the psychiatric review technique described in 20 C.F.R. § 404.1520a.  *See* 20 C.F.R. § 404.1520a(b) (requiring use of the psychiatric review technique to determine whether a claimant has a medically determinable

mental impairment).

### IV.   CONCLUSION

For the foregoing reasons, the undersigned **GRANTS** Plaintiff's *Motion for Summary*

*Judgment* (Doc. 17) as set forth herein and **DENIES** Defendant's *Motion for Summary Judgment*

(Doc. 18).

**SO ORDERED** on January 25, 2013.

RENÉE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE